**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| REBECCA LYNNE COLBERT,<br><br>                           Plaintiff,<br><br>    vs.<br><br>HIGHLAND INDUSTRIES, INC., JOYSON KSS AUTO SAFETY S.A., JOYSON SAFETY SYSTEMS f/k/a KEY SAFETY SYSTEMS, HONDA MOTOR CO., LTD., HONDA R & D CO., LTD., AMERICAN HONDA MOTOR CO., INC., AND HONDA DEVELOPMENT & MANUFACTURING OF AMERICA, LLC f/k/a HONDA OF AMERICA MFG., INC.,<br><br>                     Defendants. | CIVIL ACTION<br><br>CASE NO. _____<br><br><br>**COMPLAINT FOR DAMAGES**<br><br><br>**(JURY TRIAL DEMANDED)** |

COMES NOW PLAINTIFF, Rebecca Lynne Colbert, by and through the undersigned Counsel of Record and pursuant to the Federal Rules of Civil Procedure, and files this Complaint for Damages against the above-named Defendants Highland Industries, Inc., Joyson KSS Auto Safety S.A., Joyson Safety Systems, Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC (hereinafter collectively the "Defendants"), showing the Court as follows:

**NATURE OF THE ACTION**

1.      This is a civil action arising out of serious, permanent, life scarring and post-crash personal injuries sustained by Plaintiff Rebecca Lynne Colbert in Rockport, Texas on June 5, 2018, following a foreseeable automobile collision that resulted in the unexpected, overly volatile explosion of the driver's side Non-Azide Driver Airbag Inflator ("NADI" and / or "Defective

Inflator") in a 1998 Honda Civic, Vehicle Identification Number (VIN) 1HGEJ8241WL021952 ("Subject Vehicle"), which expelled metal shrapnel into Ms. Colbert's head, legs, and arms resulting in lacerations, burns, scars, broken facial bones, hearing loss, fracture to her neck, nerve damage and other injuries.

2.     Upon information and belief, the defective non-azide driver airbag module, the root cause of the defect, was manufactured in Cheraw, South Carolina.

3.     The Plaintiff brings this automotive products liability, negligence, and personal injury action for her injuries sustained, including but not limited to pain, suffering, permanent disfigurement and scarring, and loss of enjoyment of life.

4.     This products liability action includes claims for general negligence, gross negligence, reckless conduct and breach of warranty, which arise out of the Defendants' faulty design, selection, inspection, testing, manufacture, assembly, equipping, marketing, distribution, and sale of an uncrashworthy, defective, and unreasonably dangerous automobile and automobile airbag system.

## THE PARTIES

5.     At all times relevant herein, Plaintiff Rebecca Lynne Colbert is and was a citizen and resident of Rockport, Texas.  The overly volatile explosion of the non-azide propellant in the airbag inflator module in the 1998 Honda Civic, which resulted in the rupture of the airbag inflator module causing Mrs. Colbert's injuries and giving rise to this complaint, occurred on June 5, 2018 in Rockport, Texas, when Plaintiff was the driver of the Subject Vehicle at issue.

6.     At all times relevant herein, non-party Takata Corporation ("Takata") was a foreign for-profit corporation organized and existing under the laws of Japan with its principal place of business at ARK Hills South Tower 4-5 Roppongi 1-Chome, Minato-ku, Tokyo, 106-8488, Japan.  Takata was a specialized supplier of automotive safety systems that designed, manufactured,

2

assembled, tested, marketed, distributed, and sold vehicle restraint systems to various Original Equipment Manufacturers ("OEM's"), including Honda, in the United States and abroad, including specifically the airbag incorporated and used by Honda in its airbag safety system in the Subject Vehicle.

7.      At all times relevant herein, non-party TK Holdings Inc. ("TK Holdings") was a Delaware corporation and subsidiary and/or operational unit of Takata, headquartered in Auburn Hills, Michigan 48326.  TK Holdings was in the business of designing, manufacturing, assembling, testing, promoting, advertising, distributing, and selling vehicle restraint systems to various OEM's, including Honda, including the airbag incorporated and used by Honda in its air-bag safety system in the Subject Vehicle.  TK Holdings also is involved in the distribution of such airbag systems to OEM's, including Honda.

8.      Prior to bankruptcy, non-party Takata owned Highland Industries, Inc.

9.      Non-parties Takata and TK Holdings are hereinafter collectively referred to as "Takata."  Takata was the manufacturer of the airbag and inflator in Ms. Colbert's Vehicle, which was recalled subsequent to the Incident which forms the subject matter of this litigation.

10.     Upon information and belief, Takata manufactured airbag modules, including the Subject Airbag Module in the Subject Vehicle at the Highland Industries, Inc. facility in Cheraw, South Carolina.

11.     Defendant Joyson KSS Auto Safety S.A. with its subsidiary Joyson Safety Systems f/k/a Key Safety Systems was the "Plan Sponsor" of the Takata Bankruptcy In re: TK Holdings Inc., et al., Debtors Case No. 17-11375(BLS) in the United States District Bankruptcy Court for the District of Delaware and acquired substantially all of Takata's global operations excluding Takata's prior Phase Stabilized Ammonium Nitrate ("PSAN") Inflator Business around which the

Takata Bankruptcy revolved through the Asset Purchase Agreement, dated November 3, 2017.

12.    As a part of this transaction, Defendant Joyson Safety Systems acquired Defendant Highland Industries, Inc.

13.    In accordance with the terms of this Asset Purchase Agreement, Joyson KSS Auto Safety S.A. with its subsidiary Joyson Safety Systems f/k/a Key Safety Systems assumed the liabilities of Takata as related to the NADI inflator in the Subject Vehicle.

14.    Defendant Joyson Safety Systems is and was a foreign for-profit corporation organized and existing under the laws of Michigan with its principal place of business at 2025 Harmon Road, Auburn Hills, Michigan.

15.    Defendant Joyson KSS Auto Safety S.A. is and was an undercapitalized foreign for-profit shell corporation organized and existing under the laws of Luxembourg with its principal place of business at 2025 Harmon Road, Auburn Hills, Michigan.

16.    Defendant Highland Industries, Inc. is and was a foreign for-profit corporation organized and existing under the laws of Delaware with a principal place of business at 650 Chesterfield Highway, Cheraw, South Carolina.

17.    Defendants Joyson Safety Systems, Joyson KSS Auto Safety S.A., and Highland Industries, Inc. are collectively referred to as the "Joyson Defendants" or "Joyson."

18.    At all times relevant herein, Defendant Honda Motor Co., Ltd. ("Honda Motor") is and was a foreign for-profit corporation organized and existing under the laws of Japan with its principal place of business at 2-1-1, Minami-Aoyama, Minatoku, Tokyo 107-8556, Japan. Honda Motor manufactures and sells motorcycles, automobiles, and power products through its related subsidiaries and/or operating units, including but not limited to Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC, independent

retail dealers, outlets, and authorized dealerships primarily in Japan, North America, Europe, and Asia, including the Subject Vehicle. Honda Motor has been directly involved in the safety investigation and determinations made as to the motor vehicle safety issues arising from the defective and unreasonably dangerous condition of certain Honda brand vehicles it designs, manufactures and distributes for sale to the consuming public, including the Subject Vehicle. Honda Motor has actively been involved in the developing knowledge of this motor vehicle safety issue by Honda entities over the last two decades, and the actions and/or inactions of same relating to this public safety hazard.

19.    At all times relevant herein, Defendant Honda R & D Co., Ltd. ("Honda R&D") is and was a foreign for-profit corporation organized and existing under the laws of Japan with its principal place at Wako Research Center, 1-4-1 Chuo, Wako 351-0-113, Japan. Honda R&D is a subsidiary of Honda Motor, works in conjunction with American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC, is responsible for the research, design and development of certain aspects of Honda brand vehicles, including testing and developing safety technologies for the same, and was responsible for the design, development, manufacture, assembly, testing, distribution and sale of Honda brand vehicles utilizing Takata airbags primarily in Japan, North America, Europe, and Asia, including the Subject Vehicle. Honda R&D has been involved in the safety investigation and determinations made as to the motor vehicle safety issues arising from the defective and unreasonably dangerous condition of certain Honda brand vehicles it designs, manufactures and distributes for sale to the consuming public, including the Subject Vehicle. Honda R&D has actively been involved in the developing knowledge of this motor vehicle safety issue by Honda entities over the last two decades, and the actions and/or inactions of same relating to this public safety hazard.

20.    At all times relevant herein, Defendant American Honda Motor Co., Inc. ("American Honda") is and was a California corporation and a subsidiary of Honda Motor, headquartered in Torrance, California with its principal place of business at 1919 Torrance Blvd. Torrance, California 90501.  American Honda designs, manufactures, assembles, tests, markets, promotes, advertises, distributes and sells Honda Motor and/or Honda brand cars, trucks, and sport utility vehicles in the United States, including the Subject Vehicle. American Honda has been identified by HMC as the "Manufacturer's Agent" in communications with National Highway Traffic Safety Administration (hereinafter "NHTSA") related to this motor vehicle safety issue involving exploding, unreasonably dangerous Takata NADI airbags in Honda brand vehicles and has been directly involved in the safety investigation and determinations made as to the motor vehicle safety issues arising from the defective and unreasonably dangerous condition of certain Honda brand vehicles it makes, including the Subject Vehicle.  Additionally, American Honda is responsible for the distribution of such Honda brand vehicles in the United States, Puerto Rico and the U.S. Virgin Islands.  Moreover, American Honda has been actively involved in the developing knowledge of this motor vehicle safety issue by Honda entities over the last two decades, and the actions and/or inactions of same relating to this public safety hazard.

21.    At all times relevant herein, Defendant Honda Development & Manufacturing of America, LLC f/k/a Honda of America, Mfg., Inc. ("Honda Mfg.") is and was an Ohio corporation and subsidiary of a subsidiary of Honda Motor, headquartered in Marysville, Ohio with its principal place of business at 24000 Honda Pkwy, Marysville, Ohio 43040. Honda Mfg. designs, manufactures, assembles, tests, markets, promotes, advertises, distributes and sells Honda Motor and/or Honda brand cars, trucks, and sport utility vehicles in the United States, including the Subject Vehicle. Honda Mfg. has been directly involved in the safety investigation and

determinations made as to the motor vehicle safety issues arising from the defective and unreasonably dangerous condition of certain Honda brand vehicles it makes, including the Subject Vehicle.  Moreover, Honda Mfg. has actively been involved in the developing knowledge of this motor vehicle safety issue by Honda entities over the last two decades, and the actions and/or inactions of same relating to this public safety hazard.

22.    At all times relevant herein, Defendants Honda Motor, Honda R&D, American Honda, and Honda Mfg. are collectively referred to as "Honda" or "Honda Defendants."  Honda vehicles sold in the United States contain airbags manufactured by the Takata Defendants. NHTSA has recalled millions of Honda vehicles for having faulty Takata NADI airbags, including the Vehicle involved in the Incident which forms the subject matter of this litigation.

23.    Upon information and belief, the Defendants actions and inactions within the District of South Carolina are directly responsible for the Plaintiff's injuries and damages, which were caused by the defective inflator module incorporated into the airbag safety system in the Subject Vehicle that exploded on June 5, 2018, with inappropriately violent and excessive force, expelling shrapnel and resulting in the injuries and damages sought herein.

**VENUE**

24.    Venue is proper in the United States District Court for District of South Carolina because substantial parts of the events and omissions causing the defective product to be placed into the stream of commerce occurred in Cheraw, South Carolina.

25.    This Court provides proper venue for adjudication of this Complaint, pursuant to 28 U.S.C. § 1391(b)(2), because the acts and omissions giving rise to the claims stated herein occurred in substantial part within the territorial boundaries of the District of South Carolina.

26.    The State of South Carolina has a significant interest in the deterrence of the

tortious conduct which occurred within its borders as detailed in these claims.

## **JURISDICTION**

27.    This Court has jurisdiction to hear this Complaint under 28 U.S.C. § 1332(a).

28.    The amount in controversy, excluding interest and costs, is in excess of $75,000.

29.    Defendant Honda Motor Co., Ltd. is subject to the jurisdiction of this Court pursuant to South Carolina's long-arm statute as enumerated under S.C. Code Ann. § 36-2-803 because it operates, conducts, engages in, or carries on a business or business venture in the state of South Carolina; has an interest in real property in the state of South Carolina; produces, manufactures, and distributes goods into South Carolina with a reasonable expectation that those goods will be used in South Carolina.

30.    Defendant Honda R & D Co., Ltd. is subject to the jurisdiction of this Court pursuant to South Carolina's long-arm statute as enumerated under S.C. Code Ann. § 36-2-803 because it operates, conducts, engages in, or carries on a business or business venture in the state of South Carolina; has an interest in real property in the state of South Carolina; and produces, manufactures, and distributes goods into South Carolina with a reasonable expectation that those goods will be used in South Carolina.

31.    Defendant American Honda Motor Co., Inc. is subject to the jurisdiction of this Court pursuant to South Carolina's long-arm statute as enumerated under S.C. Code Ann. § 36-2-803 because it operates, conducts, engages in, or carries on a business or business venture in the state of South Carolina; and produces, manufactures, and distributes goods into South Carolina with a reasonable expectation that those goods will be used in South Carolina.

32.    Defendant Honda Development & Manufacturing of America, LLC is subject to the jurisdiction of this Court pursuant to South Carolina's long-arm statute as enumerated under S.C. Code Ann. § 36-2-803 because it produces, manufactures, and distributes goods into South

Carolina with a reasonable expectation that those goods will be used in South Carolina.

33.    The Honda Defendants have purposefully availed themselves of the privilege of conducting business in South Carolina.

34.    The Honda Defendants have purposefully developed and advertise a dealership network for the distribution of their vehicles and component parts into South Carolina by entering into contractual relationships with two-hundred-forty-one (241) dealers of new Honda vehicles in the State of South Carolina.



35.    The Honda Defendants have purposefully developed and advertise a supplier network for the acquisition of component parts for their vehicles and component parts in the State of South Carolina.



36.     The Honda Defendants have purposefully availed themselves of conducting business in the state of South Carolina and have established a manufacturing facility and a research and development facility within the State of South Carolina.

37.     This case arises out of or relates to Honda's acquisition and incorporation of a defective component part originally built and sold in the State of South Carolina.

38.     Defendant Highland Industries, Inc. is subject to the jurisdiction of this Court pursuant to South Carolina's long-arm statute as enumerated under S.C. Code Ann. § 36-2-803 because it operates, conducts, engages in, or carries on a business or business venture in the state of South Carolina; has an interest in real property in the state of South Carolina; and produces, manufactures, and distributes goods into South Carolina with a reasonable expectation that those goods will be used in South Carolina.

39.     Defendant Joyson Safety Systems is subject to the jurisdiction of this Court pursuant to South Carolina's long-arm statute as enumerated under S.C. Code Ann. § 36-2-803 because it operates, conducts, engages in, or carries on a business or business venture in the state of South Carolina; has an interest in real property in the state of South Carolina; and produces,

manufactures, and distributes goods into South Carolina with a reasonable expectation that those goods will be used in South Carolina.

40.     Defendant Joyson KSS Auto Safety S.A. is subject to the jurisdiction of this Court pursuant to South Carolina's long-arm statute as enumerated under S.C. Code Ann. § 36-2-803 because it operates, conducts, engages in, or carries on a business or business venture in the state of South Carolina; has an interest in real property in the state of South Carolina; and produces, manufactures, and distributes goods into South Carolina with a reasonable expectation that those goods will be used in South Carolina..

41.     Defendants are directly responsible for Ms. Colbert's injuries and damages caused by the defective airbag module in the Subject Vehicle's airbag safety system which exploded on June 5, 2018 with inappropriately violent and excessive force, rupturing the defective module's inflator, expelling shrapnel and resulting in the injuries and damages sought herein.

## THE INCIDENT

42.     On June 5, 2018, Ms. Colbert was operating her 1998 Honda Civic Coupe, VIN No. 1HGEJ8241WL021952 (the "Subject Vehicle"), and driving on the West Charles Loop in Rockport Texas, when she became involved in a foreseeable, low speed crash (the "Incident").

43.     More specifically, despite being ticketed as an at-fault party, Ms. Colbert was driving within her lane when she rounded a right-hand bend on a very narrow neighborhood road and immediately encountered an approaching truck pulling a boat trailer and boat in the center of the narrow road.  The approaching truck quickly pulled to the right lane of the narrow road, but the encumbered boat trailer was slower to respond, causing the boat trailer itself to remain in her lane of travel, striking her vehicle.  This impact, which was not the result of Ms. Colbert's actions or inactions, caused the commanded deployment of the driver's side airbag in the Subject Vehicle.

44.     Upon information and belief, at the time of the Incident, the Subject Vehicle and

11

its component sub-assemblies at issue in this action were in the same essential condition as they were at the time that they left the Defendants' control.

45.    Upon information and belief, between the date of manufacture and the date of the Incident, there were no significant modifications to the driver's side airbag safety system in the Subject Vehicle, which was in the same condition as it was originally designed, tested, and installed into the Subject Vehicle by the Defendants.

46.    During the Incident, the driver's side front airbag inflator in the Subject Vehicle deployed with such excessive internal pressure that the metal inflator canister ruptured, separated from its mounts, propelled the airbag module assembly toward Ms. Colbert's head, and expelled shrapnel into Ms. Colbert's lower extremities.



The Subject Vehicle Post-Accident





The Ruptured NADI Inflator Rupture in the Subject Vehicle    The Steering Wheel in the Subject Vehicle Post-Rupture

47.    Ms. Colbert was struck in the face by the airbag module projectile and suffered multiple facial injuries.  The rupture also propelled some of the internal components of the inflator into the passenger compartment, which caused lacerations and injuries to Ms. Colbert's legs and right hand.



Ms. Colbert's Facial Injuries



Ms. Colbert's Facial Injuries



Ms. Colbert's Leg Injuries



Ms. Colbert's Hand Injuries

48.     Ms. Colbert was transported via med-flight helicopter and required hospitalization for treatment of her shrapnel injuries (some of which can be seen above), including lacerations, burns, scars, broken facial bones, hearing loss, a fractured neck, nerve damage and other injuries.

49.     In January 2020, about a year and a half after the date of the Incident, the Subject

14

Vehicle was recalled as a result of defects in the driver's side frontal airbag system, all of which existed both at the time the Subject Vehicle was placed into the stream of commerce and at the time of the Incident, and about which the Defendants had knowledge prior to the date of the Incident.[1]

50.     Ultimately, the injuries sustained by Ms. Colbert would not have occurred but for the defects present in the Subject Vehicle and its component parts on June 5, 2018, which prevented a normal, safe, and expected airbag deployment in the Subject Vehicle in the Incident and instead turned the airbag module into a dangerous projectile which caused the Plaintiff's lacerations, burns, scars, broken facial bones, hearing loss, a fractured neck, nerve damage and other injuries.

51.     None of Ms. Colbert's actions had any impact upon the performance, behavior, or defective nature of the Subject Vehicle and / or Subject Airbag Module.

52.     As a result of the defective and unreasonably dangerous condition of the Subject Vehicle at the time of the Incident on June 5, 2018, Ms. Colbert has suffered the severe and permanent injuries, for which she now brings suit.

## **FACTUAL ALLEGATIONS**

53.     The Subject Vehicle was designed, manufactured, assembled, inspected, tested, equipped, marketed, and distributed by the Honda Defendants.

54.     Upon information and belief, the Honda Defendants substantially participated in the design, component part selection, and assembly of Takata airbag modules.

55.     At the time of the design, manufacture, assembly, inspection, testing, marketing, and distribution of the inflator, Honda and Takata were engaged in Keiretsu, a system of

---

[1] *See* NHTSA Recall Number 20V-026 (January 21, 2020).

interlocking business relationships including the cross holding of stocks designed to prevent takeover attempts and enable long-term planning in projects.

56.     At the time of design, manufacture, assembly, inspection, testing, marketing, and distribution of the inflator, Honda was Takata's largest customer.

57.     Upon information and belief, Honda's dominant relationship with Takata allowed Honda to repeatedly dictate the design of Takata products even when Takata's own internal engineering analysis, which was also reported to Honda, detailed that such a design would be dangerous to consumers.

58.     As originally designed, manufactured, assembled, inspected, tested, equipped, marketed and distributed, the Subject Vehicle contained a driver's side airbag module supplied to the Honda Defendants by Takata.

59.     As originally designed, manufactured, assembled, inspected, tested, equipped, marketed and distributed, the Subject Vehicle's Takata-supplied driver's side airbag module was in a defective condition and was unreasonably dangerous to foreseeable users and consumers of the Subject Vehicle.

60.     Upon information and belief, despite being defective, as originally designed, manufactured, assembled, inspected, tested, equipped, marketed, and distributed, the Subject Vehicle was sold to consumers as having an occupant restraint system, including airbag module, with a useful safe life equal to, or in excess of, the life of a Honda vehicle.

61.     Upon information and belief, despite being defective, the occupant restraint system in the Subject Vehicle, including the airbag module, was marketed, distributed, and sold to consumers as never requiring replacement and lasting to or beyond the life of a Honda vehicle.

A. **Airbags and Occupant Restraint Systems**

62.    Airbags are a critical component in the safety features of virtually every motor vehicle sold in the United States and throughout the world.  Currently, over 30,000 people are killed in motor vehicle accidents each year in the United States.  Remarkably, that number is nearly half of what it was in 1966, when over 50,000 Americans died in car crashes.  The drastic reduction is, in large part, due to tremendous advances in vehicle occupant safety, including the widespread use of seatbelts and airbags.

63.    In order to prevent serious injury and death resulting from bodily impact with the hard interior surfaces of automobiles, like windshields, steering columns, dashboards, and pillars, upon a vehicle experiencing a specified change in velocity in a collision, accelerometers and sensors in the vehicle frame trigger the vehicle airbags to deploy.  Because collisions can occur at rates of speed that can cause serious injury, to be effective, airbags must deploy timely and at appropriate velocity to be effective, but not subject the occupant to additional unnecessary harm. To accomplish this, the airbag system relies on explosive charges and highly conductive materials to operate in a time frame which is typically measured in milliseconds rather than seconds.

64.    When people operate a motor vehicle or ride in one as a passenger, they trust and rely on the manufacturers of those motor vehicles to make those vehicles safe.

65.    An automotive manufacturer must take all necessary steps to ensure that the safety components of its vehicles—which can mean the difference between life and death in an accident—function as designed, specified, promised, and intended.  Profits *must* take a back seat to safety for the airbag manufacturer and the automobile manufacturer in making its product sourcing decisions.  Yet Honda put profits ahead of safety. As detailed herein, Honda was well aware of rupture incidents and delayed its recalls. The result is that instead of saving lives, faulty NADI Takata airbags such as those in Honda automobiles are killing and maiming drivers and

passengers involved in otherwise minor and survivable accidents.

66.    The Subject Vehicle contained airbag modules designed, specified, and installed by Honda and manufactured by Takata and Highland Industries that, instead of protecting vehicle occupants from bodily injury during accidents, violently exploded, with excessive force, causing extensive injuries and damages.

67.    Despite Honda's prior knowledge of the propensity of the defective airbag modules to explode violently, injuring and killing occupants, the 1998 Honda Civic (Vin No. 1HGEJ8241WL021952) was not recalled until January of 2020, under Recall No. 20V-026, which also included approximately 1,500,705 other defective vehicles.[2]

68.    More specifically, the Interim Owner Notification Letter mailed in March of 2020 stated and summarized the safety risk involved in the Subject Vehicle and the other recalled defective vehicles as follows:

> Honda has decided that a defect which relates to motor vehicle safety exists in certain 1997 model year CIVIC vehicles. Due to a manufacturing issue, the inflator inside the driver frontal airbag module may absorb moisture, which may cause the driver frontal airbag to malfunction in a crash where the airbag deploys. The airbag could under-inflate during deployment, increasing the risk of injury to the driver. The airbag inflator could also rupture during deployment, with metal fragments possibly striking the driver or passengers, increasing the risk of serious injury or death. [3]

69.    Upon information and belief, prior to designing, selecting, inspecting, testing, manufacturing, assembling, equipping, marketing, distributing, and/or selling the Subject Vehicle, the Honda Defendants were aware that there existed alternative driver side frontal airbag systems

---

[2] NHTSA Part 573 Safety Recall Report, https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V026-6658.PDF (last visited May 29, 2020) (issued January 22, 2020 and covering certain model year Honda vehicles).
[3] ISSUED Interim Owner Notification Letter (Part 577),
https://static.nhtsa.gov/odi/rcl/2020/RIONL-20V026-0854.pdf (last visited May 29, 2020)

and/or designs, which were safer, more practical and were both technologically and economically feasible for inclusion in the Subject Vehicle. Upon information and belief, these alternative designs would eliminate the defective and unsafe characteristics of the Subject Vehicle without impairing its usefulness or making it too expensive.

70.    Upon information and belief, the Honda Defendants were aware that there existed alternative driver side frontal airbag system manufacturers with quality control systems in place capable of producing non-defective driver side frontal airbag systems.

71.    The Honda Defendants knew or should have known that the Takata airbags installed in millions of vehicles, including the Subject Vehicle, were defective. Upon information and belief, Honda concealed its knowledge of the nature and extent of the defects from the public, delayed disclosure, and has shown a blatant disregard for public welfare and safety.

72.    The Subject Vehicle was designed, manufactured, assembled, inspected, tested, equipped, marketed, and distributed by the Honda Defendants.

73.    Upon information and belief, the Honda Defendants substantially participated in the design, component part selection, assembly, testing, and/or inspection of Takata airbag modules in Cheraw, South Carolina.

74.    As originally designed, manufactured, assembled, inspected, tested, equipped, marketed and distributed, the Subject Vehicle's Takata-supplied driver's side airbag module contained an inflator that was in a defective condition and was unreasonably dangerous to foreseeable users and consumers of the Subject Vehicle.

75.    The Subject Vehicle has been recalled as a result of defects in its driver's side frontal airbag system, which existed at the time the Subject Vehicle was placed into the stream of commerce, and at the time of the Incident, and about which Honda Defendants did have prior

knowledge before the date on which the Incident occurred.

76.    Accordingly, as a result of the defective and unreasonably dangerous condition of

the Subject Vehicle at the time of the Incident on June 5, 2018, Plaintiff Rebecca Lynne Colbert

suffered the severe and permanent injuries for which she now brings suit.

**B.  2020 Recalls and Notices Relating to Defective NADI Inflators**

77.    In January of 2020, Honda issued Recall 20V-026 based on Takata's equipment

defect notification, 19E-080, filed in November of 2019 which states:

> According to the equipment defect notification 19E-080 filed by Takata, certain
> Takata Non-Azide Driver Airbag Inflators have the potential to exhibit elevated
> moisture ingress due to insufficient aluminum tape seal. This can lead to slow
> deployment, which may result in insufficient protection by the driver frontal
> airbag, or there may be over-aggressive combustion creating excessive internal
> pressure when the driver frontal airbag is deployed. Very high internal pressure
> could result in the body of the airbag inflator rupturing upon deployment.

78.    In document RMISC-20V026-2919 of Honda's 573 Defect filing Honda lists the

following chronology:

> **July 29, 2015**
> Honda was informed of a NADI inflator rupture event occurring at an auto dismantling
> facility in Japan on July 22, 2015. A rupture incident report confirming the rupture was
> submitted to NHTSA per Standing General Order 2015-01.
> **May 11, 2016**
> Honda was informed of a potential NADI inflator rupture field event with a reported injury
> occurring in Houston, TX on November 21, 2012. An initial rupture incident report was
> submitted to NHTSA per Standing General Order 2015-01A and an investigation into the
> rupture claim was launched.
> **July 29, 2016**
> The investigation of the Texas field event revealed that the vehicle owner initially
> contacted Honda on June 10, 2013. At that time, a claim was opened but it was
> subsequently closed on July 22, 2013 because the police report did not mention an airbag
> "rupture," the vehicle had already been scrapped, and the suspect airbag components were
> not available for inspection. However, based on photographic evidence, Honda confirmed
> that the airbag inflator ruptured and submitted a final rupture incident report to NHTSA
> per Standing General Order 2015-01A.
> **September 5, 2018**
> Honda was informed of a NADI inflator rupture event that occurred at an auto dismantling
> facility in Japan on August 10, 2018. A final rupture incident report was submitted to
> NHTSA per Standing General Order 2015-01A.

**October 31, 2019**
Takata informed Honda of two NADI inflator rupture field events in Australia which involved a different vehicle manufacturer and provided relevant information.
**November 26, 2019**
Takata submitted equipment defect notification 19E-080 to NHTSA listing Honda as an affected OEM.
**December 18, 2019**
NHTSA issued Equipment Query EQ19-002 requesting information from Honda.
**January 3, 2020**
Honda responded to EQ19-002 with an estimated population of Acura and Honda vehicles equipped with a Takata NADI inflator.
**January 16, 2020**
Honda determined that a defect related to motor vehicle safety existed and decided to conduct a safety recall.

79.    According to the timeline Honda supplied to NHTSA, Honda claimed that Honda first became aware of the potential for anomalous deployments of NADI inflators in July of 2015 when Honda was informed of a NADI rupture event at an auto dismantling facility in Japan which occurred on July 22, 2015.

80.    Upon information and belief, Honda was actually aware of field reports of anomalous deployments of NADI inflators no later than 2011.

81.    Upon information and belief, Takata began investigating the root cause for anomalous deployments of NADI inflators no later than 2011.

82.    Upon information and belief, Honda had knowledge of the NADI defect prior to 2011.

83.    Honda lists an additional NADI field event that occurred prior to the July 29, 2015 initial timeline entry which Honda supplied NHTSA as support for Recall 20V-026.

**July 29, 2016**

The investigation of the Texas field event revealed that the vehicle owner initially contacted Honda on June 10, 2013. At that time, a claim was opened but it was subsequently closed on July 22, 2013 because the police report did not mention an airbag "rupture," the vehicle had already been scrapped, and the suspect airbag components were not available for inspection. However, based on photographic evidence, Honda confirmed that the airbag inflator ruptured and submitted a final

21

rupture incident report to NHTSA per Standing General Order 2015-01A.

84.    Honda acknowledges in its timeline that Honda was notified of a NADI field event on June 10, 2013 but state it was "closed on July 22, 2013 because the police report did not mention an airbag "rupture," the vehicle had already been scrapped, and the suspect airbag components were not available for inspection." Honda ultimately confirmed the NADI field event as a rupture 3 years later on July 29, 2016 based on a review of the photographs.

85.    The actual reason this event was re-evaluated by Honda in July of 2016 was because the vehicle owner reported the event to NHTSA on May 4th, 2016 as documented in the NHTSA complaint database:

> TAKATA RECALL: ON 11/21/2012 MY SON WAS SERIOUSLY INJURED IN A COLLISION WITH ANOTHER VEHICLE THAT PULLED OUT IN FRONT OF HIM ON A HWY WHERE THE SPEED LIMIT IS 50 MPH.  MY SON WAS ABLE TO BRAKE AND STEER TO AVOID THE COLLISION BUT STILL IMPACTED THE OTHER CAR'S LEFT REAR QUARTER-PANEL.  AS A RESULT OF THE IMPACT, HIS AIRBAG DEPLOYED BUT WITH SUCH FORCE THAT IT SEPARATED FROM THE STEERING COLUMN AND EXITED THE VEHICLE.  HE RECEIVED MAJOR FACIAL LACERATIONS AND FRACTURES IN ADDITION TO AN GAPING WOUND IN HIS WRIST.  HE WAS TOLD BY SEVERAL ATTORNEYS THAT SINCE HIS CAR HAD JUST PASSED THE STATUTE OF REPOSE GATE OF 15 YR, HE COULD NOT HOPE TO BRING SUIT AGAINST HONDA/TAKATA.  TO DATE, THERE DOES NOT APPEAR TO BE ANY EFFORT TO EXTEND THE RECALL PRIOR TO 2002 FOR HONDA VEHICLES. WHEN THE EXTERNAL CAR DAMAGE IS COMPARED TO THE DAMAGE INSIDE HIS VEHICLE, HIS EXTENSIVE INJURIES, AND IMAGES OF THE AIR BAG HARDWARE ARE STUDIED, THERE IS SUFFICIENT REASON TO SUSPECT THE HONDA AIR BAG'S DETONATION RATHER THAN DEPLOYMENT WAS THE MAJOR CONTRIBUTOR TO MY SON'S INJURIES.  I UNDERSTAND THE REASONING BEHIND A STATUTE OF REPOSE BUT IN THIS CASE SUSPECT A DESIGN DEFICIENCY EXISTED PRIOR TO THE CAR'S AGE EXCEEDING THE ARBITRARY 15 YR GATE.

86.    Upon information and belief, NHTSA confirmed this incident as a rupture based upon the same information available to Honda.

87.    Upon information and belief, absent the vehicle owner's persistence this incident would likely have been buried forever.

88.    In Honda's NADI defect timeline, Honda does not list the notification of Takata, by NHTSA, of the NADI field rupture that had occurred on November 21, 2012.

89.    Takata opened an investigation which was included in its defect notification 19E-080 filed in November of 2019. Takata's May 2016 timeline entry is as follows:

> May 6th, 2016: Takata was notified, by NHTSA, of a NADI field rupture that had occurred back on 11/21/2012. The driver sustained severe injuries. An investigation was opened and learned that there was a high proportion of leaking tape seals found in field returned inflators from the earliest manufacturing time period. From the suspect date range, 76 out of 109 Takata NADI inflators examined were found to have a leaking tape seal. 1 out 150 NADI inflators outside of the suspect date range was found to have a leaking tape seal, but there was clear evidence that the seal on that inflator had been damaged from an external source. A leaking tape seal by itself is not a performance issue but could allow for moisture intrusion and potential propellant degradation under certain conditions. The identified manufacturing period was Start of Production (SOP) through August 1999. The investigation showed that propellant with a relatively high moisture content could cause decreased inflator performance. The investigation also showed propellant that gets to a relatively high moisture content and then dried to a very low moisture content could cause increased performance. None of the field inflators examined exhibited this characteristic, but some had high propellant moisture.

90.    The results of Takata's investigation detail that there was a defect in the tape seal in the airbag inflator module used to protect the propellant from outside moisture intrusion from the start of production until August of 1999.

91.    Takata's investigation into this incident should not have been initiated in May of 2016 but rather June of 2013 when the initial incident was reported to Honda.

92.    In 2013, Honda should have identified the rupture immediately with the supplied photographs and required the same investigation to take place that was ultimately performed in 2016.

93.    Had Honda performed appropriate due diligence and identified the November 21, 2012 incident as a rupture when it was reported to them on June 10, 2013 and informed its supplier of the incident, Takata's 2016 Sealing Tape investigation would have taken place in 2013 not 2016.

94.     The results of Takata's Sealing Tape investigation provided Honda with ample information to issue the recall which was eventually issued as 20V-026.  Continuing longstanding habits, instead of acting, Honda choose to wait, just as it was doing in the PSAN inflator defect investigation.

95.     Upon information and belief, in 2015, when the results of Takata's provided investigation information into the auto dismantling NADI rupture were released, Honda again had information sufficient to require the issuance of a recall of the defective NADI inflators.  Instead Honda delayed.

96.     Upon information and belief, Honda delayed in issuing recalls related to NADI inflators because Honda was already in the middle of the PSAN defect investigation and additional recalls would have been detrimental to Honda's efforts to limit the scope of the PSAN investigation.

97.     A report of a non-PSAN Takata inflator rupture in 2013 by Honda would have been detrimental to Honda's efforts to minimize the impact of the PSAN investigation.

98.     Instead, Honda waited to take action with the NADI defect until being forced to by the circumstances as was its practice during the PSAN investigation.  Ultimately Honda was forced to recall its NADI equipped vehicles after the first fatality was reported in a non-Honda vehicle on October 31, 2019. This led Takata to issue its equipment defect notification 19E-080 to NHTSA on November 26, 2019 listing Honda as an affected OEM. Honda ultimately issued recall 20V-026 on January 16, 2020 some 4 to 5 years after already being aware of the defect.

## C. The Defective Vehicles Containing Takata-Manufactured Airbags Were Sold as Safe and Reliable

99.     Upon information and belief, Honda marketed defective vehicles in advertisements and promotional materials as safe and reliable.

24

100.    Purchasers of the defective vehicles were thus led to believe their vehicles were safe and reliable vehicles despite containing the defective Takata-manufactured airbags.

101.    Purchasers of the defective vehicles were thus led to believe the occupant restraint systems, including airbags, within their vehicles would last for the lifespan of their vehicles despite containing the defective Takata-manufactured airbags.

102.    Vehicles with defective airbag systems are clearly not safe and reliable as the defective vehicles were advertised and promoted to be.

## TOLLING

103.    Plaintiffs and Defendants have entered into a tolling agreement beginning June 3, 2020 and running through the filing of this Complaint.

## EQUITABLE TOLLING

104.    Plaintiff had no way of knowing about Honda and Takata's deception with respect to the inclusion of a defective airbag inflator into the Subject Vehicle.

105.    As detailed above, Honda intentionally and fraudulently concealed information about the Subject Vehicle, the subject inflator module, and the propellant within the subject inflator module, all of which was the proximate cause of the harm to Ms. Colbert.

## ESTOPPEL

106.    The Honda Defendants, the Joyson Defendants, and Takata were under a continuous duty to disclose to Plaintiff and other vehicle owners the true character, quality, and nature of the occupant restraint system, including airbag inflator, within Honda vehicles.

107.    The Defendants knowingly, affirmatively, and actively concealed the true nature, quality, and character of the airbag inflator within the Subject Vehicle displaying a willful, reckless, and wanton disregard for life.

108.    Application of any limitation period would be improper given the continuing fraud

of the Defendants prevented the Plaintiff from discovering the defect earlier.

109.    Based on the foregoing, Defendants are estopped from relying on any statutes of limitations or statutes of repose in defense of this action.

### Conditions Precedent

110.    All conditions precedent to the bringing of this action and Plaintiff's rights to the relief sought herein have occurred, have been performed or have been excused.

### Claims for Relief

### FIRST CLAIM FOR RELIEF
### (Negligence, Gross Negligence, Willful and Wanton Conduct: Design Defect as to All Defendants)

111.    Plaintiff adopts and re-allege each prior paragraph, where relevant, as if set forth fully herein.

112.    At all times relevant herein, the Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC designed, selected, inspected, tested, assembled, equipped, marketed, distributed, and sold the Subject Vehicle and its components, including but not limited to, equipping it with its driver's side frontal airbag system.

113.    At all times relevant herein, the Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC designed the Subject Vehicle and its driver's side frontal airbag system, and owed the Plaintiff a duty of reasonable care to design, select, inspect, test, assemble, equip, market, distribute, and sell the Subject Vehicle and its components, including the driver's side frontal airbag system, so that it would provide a reasonable degree of occupant protection and safety during foreseeable

collisions occurring in the real world highway environment of its expected use.

114.    At all times relevant herein, as designed, selected, inspected, tested, assembled, equipped, marketed, distributed, and sold by the Defendants, the Subject Vehicle and its component parts are and were uncrashworthy, defective, unreasonably dangerous, and unsafe for foreseeable users and occupants because its driver's side frontal airbag system is and was inadequately designed and constructed, and failed to provide the degree of occupant protection, and safety a reasonable consumer would expect in foreseeable accidents occurring in the real world environment of its expected use.

115.    At all times relevant herein, the Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC each were collectively and respectively negligent, grossly negligent, willful, wanton, reckless, and careless in the design of the Subject Vehicle and component parts and breached their duties of care owed to Plaintiff by:

    a.    failing to timely recall vehicles and hiding the known volume of known defective NADI Takata inflator modules installed in Honda vehicles from the Plaintiff, the public and federal regulators;

    b.    failing to adopt and implement adequate safety hierarchy procedures and policies;

    c.    failing to design, manufacture, test, assemble, and/or install the driver's side airbag system so as to prevent it from having excessively energetic propellant, deploying with excessive force, and/or from expelling shrapnel in foreseeable collisions to kill or injure drivers or passengers upon air bag deployment during the same;

    d.    failing to design, test, assemble, and/or install the driver's side airbag system so that it was properly vented and would adequately deflate under foreseeable impacts;

    e.    failing to ensure that the Subject Vehicle was reasonably crashworthy;

    f.    failing to exercise reasonable care in the design of the Subject Vehicle and its driver's side frontal airbag system;

    g.    failing to exercise reasonable care in the testing of the Subject Vehicle and its driver's side frontal airbag system;

> h.     failing to exercise reasonable care in the inspection of the Subject Vehicle and its driver's side frontal airbag system;
>
> i.     failing to adopt and implement adequate warnings regarding Subject Vehicle and its driver's side frontal airbag system;
>
> j.     failing to incorporate appropriate quality assurance procedures in design of the Subject Vehicle and its driver's side frontal airbag system; and
>
> k.     on such other and further particulars as the evidence may show.

116.     At all times relevant, as a direct and proximate result of the Defendants' negligence and the breaches complained of herein, Plaintiff has suffered serious and permanent injuries including lacerations, burns, scars, broken facial bones, hearing loss, a fractured neck, nerve damage and other injuries from the Incident on June 5, 2018.

117.     WHEREFORE, Plaintiff demands judgment against Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems f/k/a Key Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC jointly and severally, for all actual and compensatory damages Plaintiff suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, for all costs of this action, and for any other such further relief as this Honorable Court and/or jury may deem just and proper.

### SECOND CLAIM FOR RELIEF
### (Negligence, Gross Negligence, Willful and Wanton Conduct: Manufacturing Defect as to All Defendants)

118.     Plaintiff adopts and re-allege each prior paragraph, where relevant, as if set forth fully herein.

119.     At all times relevant herein, the Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC

took part in and/or were responsible for the manufacture, selection, inspection, testing, design, assemblage, equipment, marketing, distribution, and/or sale of the Subject Vehicle and its component parts, including but not limited to its defective driver's side frontal airbag system, at some point prior to the Incident.

120.    At all times relevant herein, the Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC manufactured the Subject Vehicle and its driver's side frontal airbag system, and owed Plaintiff a duty of reasonable care to manufacture, select, inspect, test, assemble, equip, market, distribute, and sell the Subject Vehicle and its components, including the driver's side frontal airbag system, so that it would provide a reasonable degree of occupant protection and safety during foreseeable collisions occurring in the real world highway environment of its expected use.

121.    At all times relevant herein, as manufactured, selected, inspected, tested, assembled, equipped, marketed, distributed, and sold by the Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC the Subject Vehicle is and was uncrashworthy, defective, unreasonably dangerous, and unsafe for foreseeable users and occupants because its driver's side frontal airbag system is and was inadequately designed and constructed, and failed to provide the degree of occupant protection and safety a reasonable consumer would expect in foreseeable accidents occurring in the real world environment of its expected use.

122.    At all times relevant herein, Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd.,

American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC each were collectively and respectively negligent, grossly negligent, willful, wanton, reckless, and careless, and breached their duties of care owed to Plaintiff by:

a. failing to timely recall vehicles and hiding the known volume of known defective Takata airbag modules installed in Honda vehicles from the Plaintiff, the public and federal regulators;

b. failing to adopt and implement adequate safety hierarchy procedures and policies;

c. failing to manufacture, test, assemble, and/or install the driver's side airbag system so as to prevent it from having excessively energetic propellant, deploying with excessive force, and/or from expelling shrapnel in foreseeable collisions to kill or injure drivers or passengers upon air bag deployment during the same;

d. failing to manufacture, test, assemble, and/or install the driver's side airbag system so that it was properly vented and would adequately deflate under foreseeable impacts;

e. failing to ensure that the Subject Vehicle was reasonably crashworthy;

f. failing to exercise reasonable care in the manufacture of the Subject Vehicle and its driver's side frontal airbag system;

g. failing to exercise reasonable care in the testing of the Subject Vehicle and its driver's side frontal airbag system;

h. failing to exercise reasonable care in the inspection of the Subject Vehicle and its driver's side frontal airbag system;

i. failing to adopt and implement adequate warnings regarding Subject Vehicle and its driver's side frontal airbag system;

j. failing to incorporate appropriate quality assurance procedures in manufacture of the of the Subject Vehicle and its driver's side frontal airbag system; and

k. on such other and further particulars as the evidence may show.

123. At all times relevant, as a direct and proximate result of the Defendants' negligence and the breaches complained of herein, Plaintiff has suffered serious and permanent injuries including lacerations, burns, scars, broken facial bones, hearing loss, a fractured neck, nerve damage, mental anguish, emotional distress and other injuries from the Incident.

124. By reason of the foregoing, Plaintiff is entitled to recovery for all general and special damages sustained as a direct and proximate result of the Defendants' negligent and grossly negligent acts or omissions.

125.    WHEREFORE, Plaintiff demands judgment against Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC jointly and severally, for all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, for all costs of this action, and for any other such further relief as this Honorable Court and/or jury may deem just and proper.

### THIRD CLAIM FOR RELIEF
### (Failure to Warn as to All Defendants)

126.    Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

127.    At all times relevant herein, the Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC, as manufacturers of Subject Vehicle and its driver's side frontal airbag system, owed duties to warn of foreseeable dangerous conditions of the Subject Vehicle which would impair its safety.

128.    At all times relevant herein, the Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC knew or should have known that the Subject Vehicle's driver's side frontal airbag system had an excessively energetic inflator module and would deploy with excessive explosive force in foreseeable collisions, as well as expel shrapnel that could injure or kill occupants.

129.    At all times relevant herein, the Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd.,

American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC had no reason to believe that users would realize this potential danger.

130.    At all times relevant herein, the Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC affirmatively failed to exercise reasonable care to inform users of the Subject Vehicle's dangerous condition created by the excessively energetic inflator module in the driver's side frontal airbag system or explosive nature of the inflator that could expel shrapnel.

131.    As a direct and proximate result of the Defendants failure to warn of the dangers posed by the shrapnel and excessively energetic inflator module in the driver's side frontal airbag system in the Subject Vehicle and the breaches complained herein, Plaintiff has suffered serious and permanent injuries including lacerations, burns, scars, broken facial bones, hearing loss, a fractured neck, nerve damage, mental anguish, emotional distress and other injuries from the Incident.

132.    By reason of the foregoing, Plaintiff is entitled to recover for all general and special damages sustained as a direct and proximate result of the Defendants' negligent and grossly negligent acts or omissions.

133.    WHEREFORE, Plaintiff demands judgment against Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC  jointly and severally, for all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, for all costs of this action, and for any other such further relief

as this Honorable Court and/or jury may deem just and proper.

## FOURTH CLAIM FOR RELIEF
### (Strict Liability in Tort as to All Defendants)

134.    Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

135.    At all times relevant herein, the Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC are strictly liable for designing, testing, manufacturing, distributing, selling, and/or placing a defective and unreasonably dangerous product into the stream of commerce.

136.    At all times relevant herein, the Subject Vehicle and its driver's side airbag system was unreasonably dangerous as to its design, manufacture, distribution and warnings, causing the Vehicle to be in a defective condition that made it unreasonably dangerous for its intended use.

137.    At all times relevant herein, the Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC took some part in the manufacture and sale of the Subject Vehicle and its driver's side frontal airbag system at some time prior to the Incident.

138.    At all times relevant, the Subject Vehicle was being used in an intended and/or foreseeable manner when the Incident alleged herein occurred.  Plaintiff neither misused nor materially altered the Subject Vehicle, and upon information and belief, the Subject Vehicle was in the same or substantially similar condition that it was in at the time of purchase.

139.    At all times relevant herein, the Subject Vehicle is and was unreasonably dangerous and defective because it was designed, manufactured and sold with an excessively volatile NADI

inflator module in the driver's side frontal airbag system which deployed with dangerously excessive explosive force, exploded violently, loudly, and expelled sharp shrapnel during air bag deployment in foreseeable collisions, including during the Incident.

140.    At all times relevant herein, the Defendants were aware of feasible alternative designs which would have minimized or eliminated the risk of injury posed by the Vehicle and its driver's side frontal airbag system.

141.    At all times relevant herein, the Defendants failed to design, test, manufacture, inspect, and/or sell a product that was safe for its intended use.

142.    As a direct and proximate result of the Defendants' negligence and the breaches complained of herein, Plaintiff has suffered serious and permanent injuries including lacerations, burns, scars, broken facial bones, hearing loss, a fractured neck, nerve damage, mental anguish, emotional distress and other injuries from the Incident on June 5, 2018.

143.    WHEREFORE, Plaintiff demands judgment against Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC jointly and severally, for all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, for all costs of this action, and for any other such further relief as this Honorable Court and/or jury may deem just and proper.

### FIFTH CLAIM FOR RELIEF
### (Breach of Warranties as to the Honda Defendants)

144.    Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

145.    At all times relevant herein, the Defendants Honda Motor Co., Ltd., Honda R & D

Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC are and were "merchants" with respect to the Subject Vehicle at issue in this Complaint.

146.    At all times relevant herein, the Defendants Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC manufactured and sold the Subject Vehicle as "good" within the meaning of the relevant statutory provisions.

147.    Consequently, at the time of sale the Defendants Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC impliedly warranted that the Subject Vehicle was merchantable, including that it was fit for its ordinary purpose as a safe passenger vehicle that it could pass without objection in the trade, and that it was adequately contained, packaged and labeled.

148.    At all times relevant herein, the Defendants Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC breached the implied warranty of merchantability because the Subject Vehicle was not fit for the ordinary purpose for which it was anticipated to be used – namely as a safe passenger motor vehicle.

149.    Specifically, the driver's side frontal airbag system in the Subject Vehicle was unreasonably dangerous and defective because it was designed, manufactured, and sold with a driver's side inflator module that had the propensity to explode with overly excessive force with deafening sound expelling multiple types of hot metal shrapnel in different shapes and sizes throughout the passenger compartment during airbag deployment in foreseeable collisions, including during the Incident, which made the Subject Vehicle unfit for its ordinary purpose of

providing safe transportation.

150.    At all times relevant herein, the Defendants Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC further breached the implied warranty of merchantability as the Subject Vehicle they designed, manufactured and sold was equipped with a driver's side inflator module that will deploy with overly excessive force and deafening sound expelling multiple types of hot metal shrapnel in different shapes and sizes throughout the passenger compartment during airbag deployment in foreseeable collisions, including during the Incident, and therefore, it would not pass without objection in the trade.

151.    At all times relevant herein, the Defendants Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC further breached the implied warranty of merchantability as the Subject Vehicle was not adequately contained, packaged, and labeled in that the directions and warnings that accompanied the Subject Vehicle did not adequately instruct its owner on the proper use of the Vehicle in light of the fact that the driver's side inflator module had the propensity to explode with overly excessive force and deafening sound, expelling multiple types of hot metal shrapnel in different shapes and sizes throughout the passenger compartment during airbag deployment in foreseeable collisions to injure drivers or passengers, including during the Incident.

152.    As a proximate result of the Defendants Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC's collective and respective breaches of the implied warranty of merchantability Plaintiff suffered injuries including lacerations, burns, scars, broken facial bones, hearing loss, a fractured neck, nerve damage, mental anguish, emotional distress and other injuries from the Incident on

June 5, 2018.

153.    By reason of the foregoing, Plaintiff is entitled to recover for all general and special damages proximately caused by the Defendants Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC's breaches of the implied warranty of merchantability arising and resulting from the Incident.

154.    WHEREFORE, Plaintiff demands judgment against Defendants Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC  jointly and severally, for all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, for all costs of this action, and for any other such further relief as this Honorable Court and/or jury may deem just and proper.

### SIXTH CLAIM FOR RELIEF
### (Damages as to All Defendants)

155.    Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

156.    Because of Plaintiff's bodily injuries directly and/or proximately caused by Defendants' conduct, Plaintiff is entitled to reasonable and proper compensation for the following legal damages:

      a.    Past and future medical expenses and charges;
      b.    Past and future physical pain and mental anguish;
      c.    Past and future physical impairment;
      d.    Past and future disfigurement; and
      e.    Past lost wages and future lost wage-earning capacity.

157.    WHEREFORE, Plaintiff seeks actual and punitive damages to be awarded by the jury in an amount in excess of the minimal juridical limits of this Court.

## SEVENTH CLAIM FOR RELIEF
### (Punitive Damages as to All Defendants)

158.    Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

159.    In addition to the general and special damages suffered by the Plaintiff and proximately caused by the bad actions and inactions of Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC, as it concerns the defective operations and performance of the Subject Vehicle, and as previously alleged and set forth in this Complaint, Plaintiff also, as a further result of the Defendants' reckless, willful, negligent and grossly negligent conduct, is entitled to recover punitive damages in accordance with the law and evidence in this case in an amount to be determined at trial.

160.    More specifically, the actions and inactions of the Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC  were of such character as to constitute a pattern or practice of willful, wanton, and reckless misconduct and caused serious and substantial harm to the Plaintiff, resulting in significant and ongoing damages arising from the Incident at issue in this Complaint.

161.    Furthermore, the Defendants have acted with such a conscious and flagrant disregard for the rights and safety of the Plaintiff and the motoring public and/or deliberately engaged in willful, wanton and reckless disregard for the life and safety of the Plaintiff so as to entitle her to punitive and exemplary damages in an amount sufficient to keep such wrongful conduct from being repeated.

162.    WHEREFORE, the Defendants Joyson KSS Auto Safety S.A., Joyson Safety

Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC are liable, the Plaintiff demands judgment for punitive and exemplary damages, plus interest, costs and attorneys' fees for having to bring this action, and for any other such further relief as this Honorable Court and/or jury may deem just and proper in an amount to be determined at trial.

## Prayer for Relief

163.    **WHEREFORE**, Plaintiff prays as follows:

a. For a trial by jury and judgment against Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC for such sums as actual and other compensatory damages, including but not limited to pain and suffering, permanent impairment, past and future medical expenses, past and future loss of function, past and future loss of earnings and enjoyment of life, and future prospective medical care costs in an amount as a jury may determine and in excess of the minimum jurisdictional limit of this Honorable Court;

b. For exemplary and punitive damages against Defendants Joyson KSS Auto Safety S.A., Joyson Safety Systems, Highland Industries, Inc., Honda Motor Co., Ltd., Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda Development & Manufacturing of America, LLC in an amount as a jury may determine to halt such conduct;

c. For the costs of this suit, including attorney's fees; and

d. For such other and further relief to which she may be entitled and as this Honorable Court may deem just and proper.

Mount Pleasant, South Carolina

Dated: July 8, 2021.

Respectfully submitted,

By:  /s/ Kevin R. Dean
     Kevin R. Dean, Esq.
     John D. O'Neill, Esq.
     MOTLEY RICE LLC
     28 Bridgeside Boulevard
     Mount Pleasant, South Carolina 29464
     Phone: (843) 216-9000
     Fax: (843) 216-9450
     kdean@motleyrice.com
     jdoneill@motleyrice.com

     ***Counsel for Plaintiff***